## Commonwealth v. Bart

*Frederick B. Gerber*, city solicitor, for Commonwealth.
*Paul E. Stein*, for defendant.

ANDERSON, J., February 19, 1940.—Defendant, Coleman Bart, was found guilty by the Mayor of the City of York of violating an ordinance of the city, section 1 of which provides as follows:

"It shall be unlawful for any person or persons to cast or place . . . upon the porches of any dwellings or other buildings within the limit of the city, any paper, advertisement, handbills, circulars or waste paper; provided, however, that nothing herein contained shall be held to apply to newspapers and addressed envelopes."

From this finding of the mayor defendant has appealed.

At the hearing on the appeal it was admitted that defendant had distributed in the City of York on the date alleged a certain paper known as "The York News", a copy of which was admitted in evidence, without having the same enclosed in addressed envelopes. It was also agreed by counsel that no constitutional question whatever was involved and that the sole question to be decided by the court was whether the paper so distributed was a newspaper and hence came within the exception in the ordinance.

The particular copy of "The York News" in controversy is a six-page paper, having the general size and appearance of a newspaper. Under the title on the first page appear these words: "A Weekly Guide for Thrifty Buyers"; and to the left of this a block containing the following: "The Most Economical and Productive Advertising Medium in York County"; and to the right a similar block stating: "Volume Coverage Is Necessary to Obtain Volume Results."

Almost one half of the front page is taken up by advertisements, and the remainder is comprised of pictures, radio highlights on WBAL, Town Topics on Parade by Jay Hamilton, an editorial, an award of free tickets at one of the local theatres by "The York News," and eight items which have been picked up bodily from the York Gazette or York Dispatch and run verbatim, including the same headings given in the local papers. Page 2 is all advertising except one column and three inches, which is a continuation of Town Topics on Parade. Page 3 is all advertising except three inches devoted to a joke and two awards of free tickets by "The York News" to a local

theatre. Page 4 is over one half advertisements and the remainder is reading material similar to that on the first page. Pages 5 and 6 are solidly covered by advertisements.

The testimony shows that "The York News" has no paid subscription list; is distributed gratis, and is designed primarily for advertising purposes. On behalf of the Commonwealth, E. B. Williamson, who has been in the newspaper business for 36 years, testified that the reading matter contained in the paper was not news and explained the reasons for his statement. His testimony is practically uncontradicted. Defendant himself says that his business is "publishing an advertising newspaper, classified as a newspaper also." The paper contains no news of the world, no National news, no State news, no news of the day, and practically no local news except that which has been copied from other local papers. "The York News" is not entered, and apparently not entitled to be entered, as second class mail matter under the Act of March 3, 1879, 20 Stat. at L. 359, section 14 of which is as follows:

"Sec. 14. That the conditions upon which a publication shall be admitted to the second class are as follows:

"First. It must regularly be issued at stated intervals, as frequently as four times a year, and bear a date of issue, and be numbered consecutively.

"Second. It must be issued from a known office of publication.

"Third. It must be formed of printed paper sheets, without board, cloth, leather, or other substantial binding, such as distinguish printed books for preservation from periodical publications.

"Fourth. It must be originated and published for the dissemination of information of a public character, or devoted to literature, the sciences, arts, or some special industry, and having a legitimate list of subscribers; Provided, however, That nothing herein contained shall be so construed as to admit to the second class rate regular publications designed primarily for advertising pur-

poses, or for free circulation, or for circulation at nominal rates."

Nor does it comply with the State Act of June 12, 1939, P. L. 336, which is virtually a reënactment of the Act of May 2, 1907, P. L. 157, requiring every newspaper in the Commonwealth to print on the editorial page the name of the owner and managing editor. While it could be a newspaper without complying with this act, as the act is penal, yet the owner testified that he has been in the newspaper business for 18 years and should be aware of this act and should be complying with it if he is publishing a newspaper.

There seem to be no statutes and no decisions precisely on point in the State of Pennsylvania, although the Newspaper Advertising Act of May 16, 1929, P. L. 1784, sec. 3, gives us a definition of a newspaper insofar as it is used in the acts of assembly, as follows:

"The following words, wherever used in the acts of Assembly of this Commonwealth now in force or hereafter enacted, shall have the following meanings:

"(1) Newspaper means a printed paper or publication, bearing a title or name, and conveying reading or pictorial intelligence of passing events, local or general happenings, printing regularly or irregularly editorial comment, announcements, miscellaneous reading matter, commercial advertising, classified advertising, legal advertising, and other notices, and which has been issued in numbers of four or more pages at short intervals, either daily, twice or oftener each week, or weekly, continuously during a period of at least six months, or as the successor of such a printed paper or publication issued during an immediate prior period of at least six months, and which has been circulated and distributed from an established place of business to subscribers or readers without regard to number, for a definite price or consideration, either entered or entitled to be entered under the Postal Rules and Regulations as second class matter in the United States mails, and subscribed for by readers at a

fixed price for each copy, or at a price fixed per annum: Provided, A newspaper may be either a daily newspaper, weekly newspaper, newspaper of general circulation, official newspaper, or a legal newspaper, as defined by this act."

While this definition does not necessarily govern the meaning of the word when used in a city ordinance, yet it may be a guide in determining that question and it is manifestly apparent that "The York News" does not come within that definition.

Defendant's counsel, in a very able brief and argument, contends that "The York News" comes within the dictionary definition of a newspaper and relies largely on the case of L. H. Henry & Sons v. Rhinesmith et al., 219 Iowa 1088, 1092, 260 N. W. 9, in which a paper evidently similar to "The York News" was held by the court to be a newspaper. It must be noted, however, that this was an equitable proceeding to restrain the violation of a contract and the court found:

"Within the meaning of the term, 'newspaper', as used in the contract between these parties, such publication was a newspaper and its publication in Charles City by the Rhinesmiths or the Intelligencer Printing Company was a violation of the contract between the parties."

It is evident from the wording of the ordinance that city council used the word newspaper in the ordinary and usual sense of the word, since it excludes almost every possible form of paper which might be distributed by these words: "any paper, advertisement, handbills, circulars or waste paper. . . ."

For the above reasons and for the further reason that the testimony and evidence show that "The York News" is not a publication reporting the current general news of the day, local, National or foreign, including social, religious, political, moral, business, professional news, and other kindred subjects intended for the information of the general reading public, the court is of the opinion

and finds that it is not a newspaper but is just what it purports to be—"A Weekly Guide for Thrifty Shoppers."

Since by agreement of counsel the sole question to be determined by the court is whether the paper in question is a newspaper, and since the court finds that it is not a newspaper, the finding of the mayor that defendant is guilty of violating the city ordinance is sustained. Defendant is, therefore, adjudged guilty and sentenced to pay a fine of $10 and the costs of this proceeding.